1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 10 | JAMES HALL,                     ) | 1:08-cv-01163-AWI-JMD-HC |
| 11 |         Petitioner,     ) | FINDINGS AND RECOMMENDATION |
| 12 |    v.                           ) | REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| 13 | JAMES HARTLEY,                   ) | |
| 14 |        Respondent.     ) | OBJECTIONS DUE WITHIN THIRTY DAYS |
| 15 | ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ ) | |

16        Petitioner James Hall ("Petitioner") is a state prisoner proceeding with a petition for writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.

18                             **Procedural History**

19        On September 16, 1988, a jury convicted Petitioner of second degree murder.  (Pet. at 1).

20   The jury found true the allegation that Petitioner had used a firearm in the commission of the

21   offense.  (Id.).  The sentencing court sentenced Petitioner to sixteen years to life imprisonment.  (Id.).

22        Petitioner appeared before California's Board of Parole Hearings ("BPH") on August 31,

23   2005 for a parole suitability hearing.  (*See* Answer, Ex. A at 1).  The BPH denied Petitioner parole.

24   (Id.).

25        Petitioner filed a petition for writ of habeas corpus in the Los Angels County Superior Court

26   on August 18, 2006. (*See* id.).  The Superior Court denied Petitioner's state habeas petition in a

27   reasoned decision issued on July 18, 2007.  (Id.).

28   ///

1        Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal on

2  November 10, 2007.  (*See* Answer, Ex. B at 1).  The Court of Appeal denied the petition on

3  September 25, 2007.  (Id.).

4        Petitioner filed a petition for writ of habeas corpus in the California Supreme Court on

5  January 10, 2008.  (Id.).  The California Supreme Court denied the petition on June 25, 2008. (Id.).

6        Petitioner filed the instant petition for writ of habeas corpus in the United States District

7  Court, Eastern District of California on August 8, 2008.  (Doc. 1).  Respondent filed an answer to the

8  petition on January 7, 2009.  (Doc. 11).  Petitioner filed a traverse on February 10, 2009.  (Doc. 12).

9  <div align="center">**Factual Background**</div>

10        The BPH relied, in part, on Petitioner's commitment offense as evidence of Petitioner's

11  current risk of dangerousness.   Accordingly, the facts surrounding the commitment offense are

12  relevant to the instant petition.  The BPH relied on the version of the commitment offense set forth in

13  the Governor's 2004 reversal letter,[1] a portion of which was read into the record as follows:

> On the evening of February 8, 1988, 19 year old [Petitioner], a member of the Crips
> Gang, was standing with a group of fellow gang members in Los Angeles.  Members
> of a rival gang, the Bloods, approached.  One of the Bloods fired a shot at the Crips
> and then retreated.  No one was struck. [Petitioner], who was familiar with shotguns,
> obtained a pistol gripped 12 gauge shotgun.  He loaded it and when [sic] in search of
> the person he believed shot at him.  He walked to an apartment to find Wilson
> Woods, a Blood Gang member, who he had known since elementary school.
> [Petitioner], who was not certain whether Mr. Woods fired the earlier shot at his gang,
> shot several times when Mr. Woods stepped out of the aprartment.  He ran away
> without checking the condition of Mr. Woods.  Mr. Woods was hit in the chest and
> died from his wound.

20  (Answer, Ex. A, Parole Hearing Trans. at 12-13.).  At his parole hearing, Petitioner stated that he

21  joined the Crips Gang at the approximate age of thirteen.  (Id.).  Petitioner stated that he did not think

22  about who his victim was at the time he fired the shotgun towards the victim, but that after calming

23  down he realized that the victim was a person he had known since elementary school.  (Id. at 22).

24  Petitioner believes that he shot at the victim approximately four times.  (Id. at 25).

25        Petitioner admitted to participating in several crimes prior to the commitment offense.

26  Petitioner stated that he was an accessory to a robbery at gun-point in 1982.  (Id. at 29).  Petitioner

27  _____

28      [1] The Governor's 2004 reversal of Petitioner's parole grant is not relevant to the instant petition.  The BPH found
Petitioner unsuitable for parole at his 2006 hearing; the BPH's 2006 decision is the subject of the this action.

1  stated that he was sentenced to nine days in jail for an assault with a deadly weapon in January of

2  1987. (Id. at 30). Petitioner stated that he was also convicted for possession of a concealed weapon,

3  a firearm, in a vehicle on two separate occasions during the year 1987. (Id. at 30-31).

4      The BPH denied Petitioner parole after finding that the commitment offense was carried out

5  in an especially cruel and callous manner and that the motive for the offense was very trivial in

6  relation to the offense. (Id. at 71-72). The BPH also found that Petitioner has an unstable social

7  history and a history of criminal conduct. (Id.). The BPH noted with concern that Petitioner had not

8  yet debriefed from his gang and encouraged Petitioner to participate in self-help programing. (Id. at

9  58-59; 74).

10                                   **Discussion**

11  **I.      Jurisdiction and Venue**

12      A person in custody pursuant to the judgment of a state court may file a petition for a writ of

13  habeas corpus in the United States district courts if the custody is in violation of the Constitution or

14  laws or treaties of the United States. 28 U.S.C. § 2254(a);[2] 28 U.S.C. § 2241(c)(3); *Williams v.*

15  *Taylor*, 529 U.S. 362, 375, n.7 (2000). Venue for a habeas corpus petition is proper in the judicial

16  district where the prisoner is held in custody. *See* 28 U.S.C. § 2241(d).

17      Petitioner asserts that he is currently incarcerated at Avenal State Prison in Avenal,

18  California, in violation of his right to due process under the United States Constitution. As Avenal is

19  within the Eastern District of California, the Court has jurisdiction to entertain Petitioner's petition

20  and venue is proper in the Eastern District. 28 U.S.C. § 84; 28 U.S.C. § 2241(c)(3).

21  **II.     Standard of Review**

22      Section 2254 "is the exclusive vehicle for a habeas petition by a state prisoner in custody

23  pursuant to a state court judgment, even when the petitioner is not challenging his underlying state

24

25      [2] The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to all petitions for writ of habeas

26  corpus filed after its enactment. *Lindh v. Murphy*, 521 U.S. 320, (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir.1996),

27  *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after

28  the enactment of the AEDPA and is therefore governed by its provisions.

1   court conviction." *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126 (9th Cir. 2006)

2   (quoting *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004)).  Under section 2254, a petition

3   for writ of habeas corpus may not be granted unless the state court decision denying Petitioner's state

4   habeas petition "was contrary to, or involved an unreasonable application of, clearly established

5   Federal law, as determined by the Supreme Court of the United States," or  "was based on an

6   unreasonable determination of the facts in light of the evidence presented in the State court

7   proceeding." 28 U.S.C. § 2254(d).  "A federal habeas court may not issue the writ simply because

8   that court concludes in its independent judgment that the relevant state-court decision applied clearly

9   established federal law erroneously or incorrectly...rather, that application must be objectively

10  unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citations omitted).   In reviewing a state

11  court's summary denial of a state habeas petition, the Court must "look through" the summary

12  disposition to the last reasoned decision issued by the state.  *Ylst v. Nunnemaker*, 501 U.S. 797, 806

13  (1991).  As the California Court of Appeal and the California Supreme Court both summarily denied

14  Petitioner's state habeas petition, the Court must review the reasoned decision of the Superior Court

15  denying Petitioner relief. *Id.*  The California Supreme Court is presumed to have rejected Petitioner's

16  state habeas petition for the same reasons set forth in the reasoned decision of the Superior Court.

17  *Id.* at 803.

18  **III.     Petitioner's Due Process Claim**

19          **A. Due Process in the Parole Context**

20          The Due Process Clause of the Fourteenth Amendment of the United States Constitution

21  prohibits states from depriving persons of protected liberty interests without due process of law. *See*

22  *e.g.*, *Sass*, 461 F.3d at 1127.  The Court must "analyze Petitioner's due process claim in two steps:

23  'the first asks whether there exists a liberty or property interest which has been interfered with by the

24  State; the second examines whether the procedures attendant upon that deprivation were

25  constitutionally sufficient.'"  *Id.* (quoting *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454,

26  460 (1989) *partially overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)).

27          California law vests prisoners whose sentences provide for the possibility of parole with a

28  constitutionally protected liberty interest in the receipt of a parole release date. *Irons v. Carey*, 505

F.3d 846, 850-51 (9th Cir. 2007); *Sass*, 461 F.3d at 1128; *McQuillion v. Duncan*, 306 F.3d 895, 903 (9th Cir. 2002) (citing *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 12 (1979)); *Biggs v. Terhune*, 334 F.3d 910, 915 (2003). While California's parole statute creates a liberty interest protected by the Due Process Clause, *Irons*, 306 F.3d at 903, "since the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in [a criminal prosecution proceeding] is not constitutionally mandated" in the parole context, *Pedro v. Oregon Parole Bd.*, 825 F.3d 1396, 1399 (9th Cir. 1987). The Ninth Circuit has repeatedly held that due process requires that a parole board's denial of parole to a prisoner be supported by "some evidence." *Irons*, 505 F.3d at 851 (citing *Sass*, 461 F.3d at 1128-29 (quoting *Superintendent v. Hill*, 472 U.S. 445, 457(1985)); *see also Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904. The requirement that the parole board's denial of parole to Petitioner be supported by some evidence is well established federal law.[3] *Id.*; *see also Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904.

The some evidence standard is minimal, and is meant only to "[assure] that 'the record is not so devoid of evidence that the findings of...[the] board were without support or otherwise arbitrary.'" *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457). "Ascertaining whether [the some evidence] standard is satisfied does not require...weighing of the evidence. ..the relevant question is whether there is any evidence in the record that could support the conclusion reached." *Hill*, 472 U.S. at 455-456. Want of due process is not established by showing merely that incompetent evidence was received and considered. *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106 (1927).[4] "Upon a collateral review in habeas corpus proceedings, it is sufficient that there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Id.* "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Hill*, 472 U.S. at 456 (citations omitted).

---

[3] The Ninth Circuit is currently considering the "some evidence" standard en banc. *Hayward v. Marshall*, 512 F.3d 536, (9th Cir. 2008) *reh'g en banc granted*, 527 F.3d 797 (2008).

[4] *Vajtauer* concerned a collateral challenge to an immigration decision. The Supreme Court cited *Vajtauer* in support of its formulation of the some evidence standard in *Hill*. 472 U.S. at 455.

In assessing whether the Board's denial of parole to Petitioner is supported by some evidence, the Court's analysis "is framed by the statutes and regulations governing parole suitability determinations in the relevant state." *Irons*, 505 F.3d at 851. Accordingly, the Court must "look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' in [Petitioner's] case constituted an unreasonable application of the 'some evidence' principle articulated in *Hill*." *Id.* Under California law, the paramount inquiry in determining whether to grant a prisoner parole is whether the prisoner "will pose an unreasonable risk of danger to society if released from prison." CAL. CODE. REGS. TIT 15, § 2402(a) (2008); *In Re Lawrence*, 44 Cal. 4th 1181, 1202 (Cal. 2008). Title 15, section 2402 of the California Code of Regulations sets forth the factors to be considered by the BPH in applying California's parole statute to Petitioner. Section 2402 provides in part:

> All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

CAL. CODE. REGS., tit. 15, § 2402(b) (2008). Factors supporting a finding of unsuitability for parole include: the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; a record, prior to incarceration for the underlying offense, of violence; a history of unstable relationships with others; and serious misconduct while incarcerated. CAL. CODE REGS., tit. 15, § 2402 (c); *see also In re Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

The factors listed in section 2402(c) "establish unsuitability [for parole] if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public." *Lawrence*, 44 Cal.4th at 1212. "When a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision ...that the inmate constitutes a

1   current threat to public safety...not merely whether some evidence confirms the existence of certain

2   factual findings." *Id.*  A rational nexus between the unsuitability factors applicable to the prisoner

3   and the ultimate determination of dangerousness must exist.  *See id.* at 1227.

4          **B.  Evidence of Petitioner's Unsuitability for Parole**

5          In denying Petitioner's state habeas petition, the Superior Court found that the BPH's

6   decision was supported by some evidence of current dangerousness, including the nature of the

7   commitment offense, Petitioner's previous record of violence, and Petitioner's history of unstable

8   relationships.  The Court may not disturb the Superior Court's finding of some evidence unless the

9   finding was objectively unreasonable.

10          Section 2402(c)(1) directs the BPH to consider, among other things, whether a commitment

11   offense was committed in an especially heinous, atrocious, or cruel manner in determining suitability

12   for parole.  An offense may be especially heinous where the offense was carried out in a

13   dispassionate and calculated manner or where the motive for the crime is very trivial in relation to

14   the offense.  Cal. Code. Regs. tit 15, § 2402(c)(1)(B).  The Superior Court found that there was

15   some evidence in the record to support the parole board's finding that the offense was carried out in

16   a dispassionate manner. (Answer, Ex. A, Superior Court Decision at 1-2).  The Court cannot say that

17   the Superior Court's finding was unreasonable, as Petitioner shot an unidentified victim several

18   times with a shotgun.  (Answer, Ex. A, Parole Hearing Trans. at 22-25).  The Superior Court also

19   found that there was some evidence that the motive for Petitioner's offense was very trivial.

20   Although Petitioner's crime was an act of gang retaliation for an earlier shooting, Petitioner

21   conceded at his parole hearing that he did not know whether the person he killed was the person who

22   shot at Petitioner earlier.  (Id.).  Accordingly, the Superior Court correctly concluded that the record

23   contained some evidence that Petitioner's commitment offense was based on a very trivial motive

24   and was thus especially heinous.

25          Both the Ninth Circuit and the California Supreme Court have suggested that at some point,

26   relying solely on a prisoner's commitment offense to deny parole may constitute a denial of due

27   process.  *See, e.g., Biggs*, 334 F.3d 916-917 ("continued reliance...on...the circumstance of the

28   offense and conduct prior to imprisonment...could result in a due process violation"); *Lawrence,* 44

Cal. 4th at 1202 (where evidence of inmate's rehabilitation and suitability for parole is overwhelming, and commitment offense is both temporally remote and mitigated by circumstances indicating the conduct is unlikely to recur, the immutable circumstance that the commitment offense involved aggravated conduct does not provide "some evidence").   The Court need not grapple with the difficult question of whether Petitioner's commitment offense, standing alone, constitutes "some evidence" that the Petitioner currently poses an unreasonable risk of danger if released, as the Superior Court correctly noted that the BPH's finding of dangerousness was based on a culmination of factors.   CAL. CODE. REG. tit 15 § 2402(b) (factors "which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability"); *see also Sass*, 461 F.3d at 1128 ("relevant question is whether there is *any* evidence in the record that could support the conclusion reached") (emphasis added); *Biggs*, 334 F.3d at 916 (despite the fact that several of the Board's reasons for denying parole were not supported by the record, some evidence as to one of the Board's reasons was sufficient to preclude habeas relief).[5]

        The BPH found that Petitioner's commitment offense, combined with his previous record of violence and unstable social history, rendered Petitioner unsuitable for parole.  (*See* Answer, Ex. A, Superior Court Decision).  Section 2402(c)(2) directs the BPH to consider a prisoner's previous record of violence in considering suitability for parole.  Cal. Code. Regs. tit 15, § 2402(c)(2).  The Superior Court found, correctly, that the record contained some evidence that Petitioner has a history of violent crime.  At his parole hearing, Petitioner stated that he had been an accessory to a robbery at gun-point and had committed a previous assault with a deadly weapon in January of 1987.  (Id. at 30).  Petitioner also stated that he was convicted for possession of a concealed weapon on multiple occasions.  (Id.).

///

---

        [5] The Court notes that the Ninth Circuit's decision in *Biggs* predates the California Supreme Court's decision in *Lawrence*, which made clear that evidence of the existence of an unsuitability factor is insufficient to establish some evidence of dangerousness in and of itself.   Nevertheless, the Ninth Circuit's reasoning–that due process may be satisfied even where some of the parole board's findings are not supported by the record–applies with equal force to the standard articulated in *Lawrence*.  *See Ex rel. Vajtauer*, 273 U.S. at 106 ( "Upon a collateral review in habeas corpus proceedings, it is sufficient that there was some evidence from which the conclusion of the administrative tribunal could be deduced"); *see also Hill*, 472 U.S. at 456 ("The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact").

1    The Superior Court's findings regarding the nature of the commitment offense and

2  Petitioner's history of violence are supported by the record.  However, California law requires more

3  than the mere presence of some evidence of certain unsuitability criteria before a prisoner may be

4  denied parole.  *See, e.g., Lawrence*, 44 Cal.4th at 1212.

5  The ultimate inquiry is whether there is some evidence of current dangerousness.  *Id.*

6    After reviewing the entire transcript of Petitioner's parole hearing, the Court cannot say that

7  the Superior Court's finding, that the record contains some evidence of Petitioner's current

8  dangerousness, is objectively unreasonable.  Throughout the hearing and decision portions of

9  Petitioner's 2006 parole hearing, the BPH expressed concern that Petitioner had not yet debriefed

10  from his gang at the time of the 2006 hearing.  (Answer, Ex. A, Parole Hearing Trans. at 58-59; 74).

11  The heinous nature of Petitioner's gang-motivated commitment offense, combined with Petitioner's

12  previous record of violence, bears a rational nexus to the BPH's finding of dangerousness, especially

13  in light of Petitioner's failure to disassociate himself from his gang.  Whatever doubts the Court has

14  about the probative value of Petitioner's aging crimes, "a federal habeas court may not issue the writ

15  simply because that court concludes in its independent judgment that the relevant state-court decision

16  applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75.

17  Accordingly, the Court may not afford Petitioner relief under section 2254.  *Id.*

18                               **<u>RECOMMENDATION</u>**

19    Based on the reasons stated above, the Court RECOMMENDS that the petition for writ of

20  habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter

21  judgment for Respondent.

22    This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United

23  States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304

24  of the Local Rules of Practice for the United States District Court, Eastern District of California.

25  Within thirty (30) days after being served with a copy, any party may file written objections with the

26  court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate

27  Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within

28  ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.  The Court will

1   then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c).  The parties are

2   advised that failure to file objections within the specified time may waive the right to appeal the

3   District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

4   IT IS SO ORDERED.

5   **Dated:    August 20, 2009            /s/ John M. Dixon          **
                                        UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28